OPINION
Brian Kelble is appealing from his convictions of one count of failure to comply with the order or signal of a police officer, R.C.2921.33(1)(b), and one count of driving under the influence of alcohol, R.C. 4511.09(A)(1). A motion to suppress was filed, and a hearing was held on November 21, 2000, after which at a second hearing held on April 5, 2001, the Xenia Municipal Court overruled the motion, and with the consent of counsel for both parties, proceeded to summarize her factual findings regarding both charges, as follows:
Okay. For the purpose of the motion that was filed and heard in November, the Court makes the following findings: The Defendant, the evidence established, was at the Jacoby Road Canoe Launch on the date in question, July 2, 2000, with other people. The Defendant had a red truck that he was operating. The Defendant left the launch with — it was later established by the Defendant and his friends they had been canoeing and drinking and the Defendant left that area.
The officers observed, and specifically Officer Snyder, Matthew Snyder, testified that he observed the Defendant. The Defendant had previously been observed or the Defendant's truck at the launch by Officer Gelbaugh, and Officer Snyder observed the Defendant in his vehicle and a white vehicle leave the launch area. It was after the park's closing hours. So the officers followed the vehicles with the purpose in mind to warn or cite the persons involved for being in the park after hours.
The officer had some difficulty staying up with the other two vehicles, but eventually observed them pull into a driveway which later turned out that it was one of Mr. Kelble's relative's driveway.
They turned in the driveway. Officer Snyder was behind Mr. Kelble and signaled him with the rotating cruiser lights to stop. The Defendant did not. The officer chirped his siren. The Defendant still did not stop. The siren was then fully put on and the Defendant still did not stop, got to the end of the driveway, which apparently ended at the river, and the Defendant got out of the vehicle and ran and hid in the woods where he was located almost two hours later. Actually, he presented himself when they started to tow his red truck away.
The Defendant was observed by Officer Snyder to have an odor of an alcoholic beverage, glassy, bloodshot eyes. The Defendant denied initially that he had been drinking and then admitted that he had been drinking. He claimed that for the almost two-hour period he was missing that he had been frogging. However, it appeared from the observation of the officers that the Defendant had been, in fact, lying in leaves hiding. He had some imprint and some leaves, et cetera on him. The Defendant eventually admitted to drinking. He was also identified as the driver of the vehicle by his companions, and Officer Snyder did observe Mr. Kelble leave the driver's side of the vehicle when he ran and hid.
All of these events occurred within Greene County, Ohio, within this Court's jurisdiction on the date charged.
After the Defendant was observed with the glassy, bloodshot eyes and the odor of alcohol, he was asked to perform some field sobriety tests, which he declined to do. He was arrested as the officer gave his opinion in court that the Defendant was appreciably impaired, under the influence of alcohol, and the Defendant was arrested, taken to the police station, Xenia Police Station, was asked to take a Breathalyzer test four times. The Defendant refused four times and was placed under an ALS suspension. The only statements the Defendant made were at the scene prior to his arrest as to the amount that he had had to drink and what he had been doing.
So, as to the motion, the Court finds that the motion is not well taken. None of the statements of the Defendant were taken when he was in custody. His refusal to take the Breathalyzer test and to perform the field sobriety tests was clear. He would not do any coordination tests. The Defendant was validly stopped, although actually he was not stopped because he wouldn't stop, but he was validly detained when he finally presented himself to the officers because, at this point, for one thing, he had failed to comply with the lawful order of the police officer at the stop, and also he was in the park after hours. So they had the authority to pursue him.
Again, the initial reason for pursuing him was to, according to the officer, warn him that he was not to be in the park after hours, he and his friends.
The Court finds that none of the Defendant's rights as alleged were violated. So the motion to suppress is overruled in its entirety.
The parties also stipulated today that the facts could be considered on the issue of whether or not the Defendant committed these offenses. The Court has already discussed the failure to comply with the lawful order of a police officer, which the Defendant clearly failed to comply with, both in failing to stop his vehicle and then running off when he got the vehicle stopped.
At the scene, there were sheriff's deputies and the two park rangers. There were numerous people looking for the Defendant who was hiding for approximately two hours. That is definitely a failure to comply, and on the charge of operating a motor vehicle under the influence of alcohol, the officer did give his opinion that the Defendant was under the influence. He gave a description of the Defendant as having an odor of an alcoholic beverage and bloodshot eyes. The Defendant admitted to drinking. There were numerous beer cans in the vehicles of these people that the Defendant was with and the Defendant's vehicle in the bed of the truck in the canoe that they were using. There was also a cooler. The cooler was not checked, but there were numerous beer cans mentioned by the officer in these locations.
So, the fact that the Defendant refused to take any tests and refused the Breathalyser is something the Court is permitted by law to consider as to whether or not the Defendant had something to conceal, and the Court does that in that fashion.
The Court finds that the officers were within their authority on the roads they were on and the property they were on in trying to contact the Defendant because they were pursuing him for a violation within the park and because the officers are licensed in the State as police officers. The entire thing was an attempt to get the Defendant's attention as to being in the park after hours, and it escalated only because of the Defendant's lack of cooperation.
So I am finding him guilty on both of the violations.
Mr. Stafford, what do you want to say?
 MR. STAFFORD: Is the court requesting a recommendation or —
THE COURT: Any input you want to give, right.
 MR. STAFFORD: Your Honor, the only one point I might ask the Court to clarify, if the Court wishes to do that at all, is that we have talked about the initial or the officer testified to the initial contact being approximately 9:52 p.m.
THE COURT: Right.
 MR. STAFFORD: It is my understanding that he believed his contact with the Defendant when he came out of the woods after the alleged hiding time period was approximately 11:30, which may be important for the record. It would appear to me that the officer's contact was within an hour and a half or an hour and 30 minutes or something like that as opposed to two hours, but they do have two hours to make observation of the Defendant.
 THE COURT: Well, and the Breathalyser refusal was recorded at, I think, eight minutes after midnight. So what I'm looking at here — let me clarify that.
On appeal, the appellant presents the following four assignments of error:
 1. THE COURT ERRED IN ALLOWING THE WARRANTLESS DETENTION AND ARREST OF THE APPELLANT FOR A MISDEMEANOR ON PRIVATE PROPERTY OUTSIDE THE JURISDICTION OF THE PARK RANGER AND NOT AS THE RESULT OF HOT PURSUIT.
 2. APPELLANT'S CONVICTION IS AGAINST THE WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND MUST BE REVERSED AS A MATTER OF LAW.
 3. STATEMENTS MADE WHILE THE APPELLANT WAS IN CUSTODY WITHOUT MIRANDA WARNINGS MUST BE SUPPRESSED.
 4. THE COURT DEMONSTRATED BIAS AGAINST THE APPELLANT IN SENTENCING HIM.
The State did not favor this court with a brief. Nevertheless, we can accept the findings, insofar as they are supported by law, of the judge as heretofore quoted.
As such, we find ample evidence to support the conviction by the court that Mr. Kelble failed to comply with the order and signal of the police officer in this case. However, we find insufficient evidence to support a conviction that Mr. Kelble was driving while under the influence. Because an OMVI conviction carries criminal penalties, the reasonable doubt standard applies. The officer did not testify that he observed any erratic driving of Mr. Kelble, and while there is certainly some evidence that Mr. Kelble had been drinking some beer, (he admitted only two), these observations were made by the park ranger long after Mr. Kelble had been seen driving his vehicle. His refusal to submit to the usual tests does not in itself prove that he was actually driving while under the influence. The conviction for driving under the influence is hereby vacated.
The first, third, and fourth assignments of error are overruled. The second assignment is sustained insofar as it relates to the DUI conviction, but overruled as to the failure to comply with the signal of a police officer.
The judgment of the trial court is thereby affirmed in part and reversed in part. The case is remanded for any further proceedings consistent with this opinion.
BROGAN, J. and GRADY, J., concur.